UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------X
OSCAR DUNCAN ROBLES and JAIME GENAO,
individually and on behalf of all others similarly situated,

                                  Plaintiffs,

                    -against-

LUIS FURNITURE STYLE CORP., LUIS FURNITURE #1
INC., LUIS FURNITURE #2 INC. d/b/a AMSTERDAM
FURNITURE, LUIS TORRES, and NELLY LANTIGUA,

                                 Defendants.
---------------------------------------------------------------------------X

CIVIL ACTION NO.

COMPLAINT

Plaintiffs Oscar Duncan Robles and Jaime Genao (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, Katz Melinger PLLC, complaining of the defendants, Luis Furniture Style Corporation ("Luis Furniture Style"), Luis Furniture #1 Inc. ("Luis Furniture #1"), Luis Furniture #2 Inc. d/b/a Amsterdam Furniture ("Amsterdam Furniture"), Luis Torres, and Nelly Lantigua (collectively, "Defendants"), respectfully allege as follows:

### I. Nature of Action, Jurisdiction, and Venue

1. This is an action seeking equitable and legal relief for Defendants' violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq*. ("FLSA"), the New York Labor Law §§ 190 *et seq*. and 650 *et seq*. ("NYLL"), and the Internal Revenue Code, 26 U.S.C. § 7434.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that this is an action arising under the FLSA and the Internal Revenue Code.

3. This Court has supplemental jurisdiction over the claims arising under New York state law pursuant to 28 U.S.C. § 1367, in that the New York state law claims are so closely related

to Plaintiffs' federal claims as to form the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, and Defendants conduct business through their employees, including Plaintiffs, within this judicial district.

## II. Parties

5. Plaintiffs are individuals residing in the State of New York.

6. Defendants Luis Furniture Style and Luis Furniture #1 are domestic corporations with a principal place of business located at 509 West 125th Street, New York, New York 10027 (the "125th Street Location").

7. Defendant Amsterdam Furniture is a domestic corporation with its principal place of business located at 1985 Amsterdam Avenue, New York, New York 10032 (the "Amsterdam Location").

8. Luis Furniture Style, Luis Furniture #1, and Amsterdam Furniture (the "Stores") are retail stores that sell furniture, décor, and electronic appliances.

9. Defendants Torres and Lantigua are individuals residing, upon information and belief, in the State of New York.

10. At all relevant times, Torres and Lantigua were, and still are, officers, directors, shareholders and/or persons in control of the Stores who exercise significant control over the Stores' operations and have the authority to hire, fire, and discipline employees, set employees' work schedules and conditions of employment, determine the rate and method of payment for employees, and maintain employment records.

11. Upon information and belief, during all relevant times, the Stores had common owners, officers and directors, and were controlled by Torres and Lantigua.

12. Upon information and belief, during all relevant times, the Stores shared many of the same employees.

13. Upon information and belief, during all relevant times, the Stores utilized much of the same equipment, vehicles, and inventory.

14. Upon information and belief, at all relevant times, the Stores were operating as one business using many of the same employees, management, and equipment.

15. Upon information and belief, Luis Furniture #1 and Amsterdam Furniture were operating as mere divisions of Luis Furniture Style, and not as independent profit centers.

16. At all relevant times, Defendants were responsible for setting Plaintiffs' schedules and day-to-day activities, and for supervising their performance.

17. At all relevant times, Defendants had the power to discipline and terminate Plaintiffs.

18. At all relevant times, Defendants were responsible for compensating Plaintiffs.

19. Defendants jointly managed, supervised, hired, and fired Plaintiffs and controlled Plaintiffs' compensation, and are jointly and severally liable in this matter.

20. Defendants are covered employers within the meaning of the FLSA and the NYLL and, at all relevant times, employed Plaintiffs.

21. At all relevant times, Plaintiffs were covered employees within the meaning of the FLSA and the NYLL.

22. Upon information and belief, at all relevant times, Defendants' gross revenues were in excess of $500,000.00 per year.

23. Defendants operate in interstate commerce.

24. Defendants are subject to suit under the statutes alleged above.

### III. FLSA Collective Action Allegations

25. The First Cause of Action in this Complaint, which arises out of the FLSA, is brought by Plaintiffs on behalf of themselves and similarly situated persons who were employed since the date three (3) years prior to the filing of this Complaint and who elect to opt-in to this action (the "FLSA Collective Plaintiffs").

26. The FLSA Collective Plaintiffs consist of no less than four (4) similarly situated current and former employees of Defendants who worked as drivers, driver's assistants, and/or salespersons, who have been victims of Defendants' common policies and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them overtime wages, minimum wages and other pay.

27. As part of their regular business practices, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs and the FLSA Collective Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA. This policy and pattern or practice includes, *inter alia*, failing to compensate employees at the applicable minimum wage rate for all hours worked and at the applicable overtime rate for all time worked in excess of forty (40) hours per week.

28. Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation.

29. Defendants' unlawful conduct has been intentional, willful, and in bad faith, and has caused significant damages to Plaintiffs and the FLSA Collective Plaintiffs.

30. The FLSA Collective Plaintiffs would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those

similarly situated employees are known to Defendants, are readily identifiable, and are locatable through Defendants' records. These similarly situated employees should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).

## IV. Factual Allegations

### Oscar Duncan Robles

31. Plaintiff Robles worked for Defendants as a driver's assistant from in or around December 2014 until on or around November 2, 2019.

32. As a driver's assistant, Robles' primary job duties included loading and unloading furniture from trucks, assembling and organizing furniture, and performing maintenance work.

33. Throughout his employment with Defendants, Robles primarily worked at the 125th Street Location.

34. However, approximately two (2) to three (3) days per week, Robles was instructed to travel to the Amsterdam Location to perform tasks such as dropping off inventory, picking up furniture for deliveries, and organizing and cleaning the Amsterdam Location's warehouse.

35. Throughout his employment, Robles regularly worked Mondays through Saturdays, from approximately 10:00 a.m. to 8:00 p.m., with a daily thirty (30) minute meal break, for a total of approximately fifty-seven (57) regularly-scheduled hours per week ("Regularly Scheduled Hours").

36. However, at least two (2) days per week, Robles was required to work until approximately 10:00 p.m., for an additional four (4) hours per week ("Late Hours").

37. As a result, Robles worked an average of approximately sixty-one (61) hours per week throughout his employment with Defendants.

38. Throughout his employment, Robles was paid a fixed weekly salary for all Regularly Scheduled Hours per week, and an additional hourly payment for every Late Hour worked.

39. Robles was paid a weekly salary of $400.00 for all Regularly Scheduled hours from the start of his employment until in or around December 2015; a weekly salary of $500.00 for all Regularly Scheduled hours from in or around January 2016 until in or around December 2018; and a weekly salary of $600.00 for all Regularly Scheduled Hours from in or around January 2019 until the end of his employment.

40. Additionally, Robles was paid $10.00 for each Late Hour worked throughout his employment.

41. Throughout Robles' employment, Robles was paid a portion of his compensation by check, with withholdings for federal, state and local taxes, and the remaining portion of his compensation in cash, without any withholdings for federal, state and local taxes.

42. Upon information and belief, the IRS Form W-2 that Defendants filed for Robles only reported the portion of Robles' compensation that was paid by check.

<u>Jaime Genao</u>

43. Plaintiff Genao worked for Defendants as a driver's assistant from in or around January 2014 until in or around October 21, 2019.

44. As a driver's assistant, Genao's job duties were similar to those of Robles.

45. From in or around January 2014 until in or around January 2017, Genao regularly worked only on weekends and holidays between the months of September and May.

46. However, during the summer months, between June and August, Genao regularly worked Mondays through Saturdays, from approximately 10:00 a.m. to 8:00 p.m., with a thirty

6

(30) minute daily meal break, for a total of approximately fifty-seven (57) Regularly Scheduled Hours per week.

47. However, during the summer months, Genao was required to work until between 9:00 p.m. and 10:00 p.m. at least four (4) days per week, for an average of approximately six (6) Late Hours per week.

48. As a result, Genao worked an average of approximately sixty-three (63) hours per week between the months of June and August in 2014, 2015, and 2016.

49. Beginning in or around February 2017, Genao began working the Regularly Scheduled Hours and Late Hours each week.

50. As a result, between February 2017 and the end of his employment, Genao worked an average of approximately sixty-three (63) hours per week.

51. From in or around January 2014 until in or around December 2017, Genao was paid $7.50 per Regularly Scheduled Hour worked and $10.00 per Late Hour worked.

52. From in or around January 2018 until in or around December 2018, Genao was paid $8.00 per Regularly Scheduled Hour worked and $10.00 per Late Hour worked.

53. From in or around January 2019 until the end of his employment, Genao was paid $10.00 per hour for all hours worked.

54. Throughout Genao's employment, Genao was paid a portion of his compensation by check, with withholdings for federal, state and local taxes, and the remaining portion of his compensation in cash, without any withholdings for federal, state and local taxes.

55. Upon information and belief, the IRS Form W-2 that Defendants filed for Genao only reported the portion of Genao's compensation that was paid by check.

Defendants' Violations

56. While employed with Defendants, Plaintiffs were non-exempt employees under the FLSA and NYLL and were entitled to be paid not less than the applicable minimum wage for all hours worked and overtime compensation of one and one-half (1.5) times their regular hourly rates of pay or the minimum wage, whichever is greater, for all hours worked in excess of forty (40) per week.

57. Throughout Plaintiffs' employment, Defendants paid Plaintiffs at a rate that fell below the applicable New York State minimum wage rate.

58. Furthermore, despite routinely working more than forty (40) hours per week, Plaintiffs were not paid overtime compensation of one and one-half (1.5) times their regular hourly rates of pay or the minimum wage, whichever is greater, for the hours they worked over forty (40) per week.

59. Defendants also failed to furnish to Plaintiffs, at the time they were hired or at any time thereafter, a notice containing their rates of pay, the designated payday, or other information required by NYLL § 195(1).

60. Plaintiffs also did not receive, with each wage payment, statements listing their regular and overtime rates of pay, the number of regular and overtime hours worked, gross wages, deductions, and anything otherwise required by NYLL § 195(3).

61. Defendants also reported fraudulent information to the IRS in violation of 26 U.S.C. § 7434 by filing Forms W-2 with false information regarding the amount of wages Defendants paid to Plaintiffs.

62. Defendants violated federal and state law by willfully failing to pay Plaintiffs and similarly situated employees the statutory minimum wages and overtime compensation owed to

them, by failing to provide Plaintiffs with statutory payroll notices and wage statements, and by filing false information statements to the IRS.

## AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, INDIVIDUALLY, AND THE FLSA COLLECTIVE PLAINTIFFS
(Overtime Violations Under the FLSA)

63. Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, repeat and reallege all prior allegations set forth above.

64. Pursuant to the applicable provisions of the FLSA, Plaintiffs and the FLSA Collective Plaintiffs were entitled to overtime compensation of one and one-half (1.5) times their regular hourly rates of pay or the applicable minimum wage, whichever is greater, for all hours worked in excess of forty (40) hours per week.

65. Plaintiffs and the FLSA Collective Plaintiffs regularly worked in excess of forty (40) hours per week during their employment with Defendants.

66. Throughout the relevant time period, Defendants knowingly failed to pay Plaintiffs and the FLSA Collective Plaintiffs overtime wages of one and one-half (1.5) times their regular hourly rates of pay or the applicable minimum wage, whichever is greater, for each hour worked in excess of forty (40) hours in a workweek.

67. As a result of Defendants' violations of the law and failure to pay Plaintiffs and the FLSA Collective Plaintiffs required overtime wages, Plaintiffs and the FLSA Collective Plaintiffs have been damaged and are entitled to recover from Defendants all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

68. As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiffs and the FLSA Collective Plaintiffs are entitled to damages equal to 100% of their unpaid overtime wages ("liquidated damages").

69.     Judgment should be entered in favor of Plaintiffs and the FLSA Collective Plaintiffs and against Defendants on the First Cause of Action in the amount of their respective unpaid overtime wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A SECOND CAUSE OF ACTION
(Minimum Wage Violations Under the NYLL)

70.     Plaintiffs repeat and reallege all prior allegations set forth above.

71.     Pursuant to the applicable provisions of the NYLL, Plaintiffs were entitled to be paid at least the statutory minimum wage for all of the hours they worked.

72.     Throughout Plaintiffs' employment, Defendants knowingly failed to pay Plaintiffs the statutory minimum wages for the hours they worked.

73.     As a result of Defendants' violations of the law and failure to pay Plaintiffs the required minimum wages, Plaintiffs have been damaged and are entitled to recover from Defendants all minimum wages due, along with all reasonable attorneys' fees, interest, and costs.

74.     As Defendants did not have a good faith basis to believe that their failure to pay minimum wages was in compliance with the law, Plaintiffs are entitled to liquidated damages.

75.     Judgment should be entered in favor of Plaintiffs and against Defendants on the Second Cause of Action in the amount of their unpaid minimum wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A THIRD CAUSE OF ACTION
(Overtime Violations Under the NYLL)

76.     Plaintiffs repeat and reallege all prior allegations set forth above.

77. Pursuant to the applicable provisions of the NYLL, Plaintiffs were entitled to overtime compensation equal to one and one-half (1.5) times their regular hourly rates of pay or the applicable minimum wage, whichever is greater, for all hours worked in excess of forty (40) hours per week.

78. Plaintiffs regularly worked in excess of forty (40) hours per week during their employment with Defendants.

79. Throughout the relevant time period, Defendants knowingly failed to pay Plaintiffs overtime wages of one and one-half (1.5) times their regular hourly rates of pay or the applicable minimum wage, whichever is greater, for each hour worked in excess of forty (40) hours in a workweek.

80. As a result of Defendants' violations of the law and failure to pay Plaintiffs the required overtime wages, Plaintiffs have been damaged and are entitled to recover from Defendants all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

81. As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiffs are entitled to liquidated damages.

82. Judgment should be entered in favor of Plaintiffs and against Defendants on the Third Cause of Action in the amount of their respective unpaid overtime wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A FOURTH CAUSE OF ACTION**
(Failure to Timely Pay Wages Under the NYLL)

83. Plaintiffs repeat and reallege all prior allegations.

84. Pursuant to the provisions of NYLL § 191(1)(a)(i), Plaintiffs were entitled to be paid their earned wages weekly and not later than seven (7) calendar days after the end of the week in which the wages were earned.

85. During the relevant period, Defendants routinely failed to pay Plaintiffs all of their earned wages in accordance with the agreed-upon terms of employment.

86. During the relevant period, Defendants failed to timely pay Plaintiffs all of their earned wages on a weekly basis and not later than seven (7) calendar days after the end of the week in which the wages were earned.

87. As a result of Defendants' violations of the law and failure to pay Plaintiffs in accordance with NYLL § 191(1)(a)(i), Plaintiffs have been damaged and are entitled to recover from Defendants all wages due, along with all reasonable attorneys' fees, interest, and costs.

88. As Defendants did not have a good faith basis to believe that their failure to pay wages was in compliance with the law, Plaintiffs are entitled to liquidated damages.

89. Judgment should be entered in favor of Plaintiffs and against Defendants on the Fourth Cause of Action for all wages due, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

## AS AND FOR A FIFTH CAUSE OF ACTION
(Failure to Provide Payroll Notices Under the NYLL)

90. Plaintiffs repeat and reallege all prior allegations.

91. Defendants failed to furnish to Plaintiffs, at their time of hire or at any time thereafter, notices containing their rate or rates of pay and basis thereof; allowances, if any, claimed as part of the minimum wage; their regular pay day designated by the employer; and other information required by NYLL § 195(1).

92. As Defendants failed to provide Plaintiffs with payroll notices as required by NYLL § 195(1), Plaintiffs are entitled to liquidated damages in the amount of $50.00 per day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorneys' fees and costs.

93. Judgment should be entered in favor of Plaintiffs and against Defendants on the Fifth Cause of Action in the amount of $5,000.00 each, along with attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A SIXTH CAUSE OF ACTION**
(Failure to Provide Wage Statements Under the NYLL)

94. Plaintiffs repeat and reallege all prior allegations.

95. Throughout the relevant time period, Defendants failed to furnish to Plaintiffs, with each wage payment, a statement listing: their regular and overtime rates of pay and basis thereof; the number of regular and overtime hours they worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of NYLL § 195(3).

96. As Defendants failed to provide Plaintiffs with wage statements as required by NYLL § 195(3), Plaintiffs are entitled to liquidated damages in the amount of $250.00 per day for every day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorneys' fees and costs.

97. Judgment should be entered in favor of Plaintiffs and against Defendants on the Sixth Cause of Action in the amount of $5,000.00 each, along with attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
(Fraudulent Filing of Information Returns)

98. Plaintiffs repeat and reallege all prior allegations.

99. Throughout Plaintiffs' employment, Defendants regularly paid Plaintiffs part of their wages by check, with withholdings for federal, state, and local taxes, and part of their wages in cash, without any withholdings for federal, state and local taxes.

100. During this time period, Defendants provided Plaintiffs with copies of IRS Forms W-2 that Defendants filed with the United States Internal Revenue Service ("IRS"), which reflected only the wages that Defendants paid to Plaintiffs by check.

101. A Form W-2 is an information return as defined by 26 U.S.C. § 6724(d)(1).

102. Defendants reported fraudulent information to the IRS in violation of 26 U.S.C. § 7434 by filing Forms W-2 with false information regarding the wages they paid to Plaintiffs.

103. As Defendants willfully filed fraudulent information returns in violation of 26 U.S.C. § 7434, Plaintiffs are entitled to damages in an amount equal to the greater of $5,000.00 each, or the sum of any actual damages sustained by Plaintiffs, costs of the action, and reasonable attorneys' fees.

104. Judgment should be entered in favor of Plaintiffs and against Defendants on the Seventh Cause of Action in an amount equal to the greater of $5,000.00 each or the sum of any actual damages sustained by Plaintiffs, costs of the action, and reasonable attorneys' fees.

**AS AND FOR AN EIGHTH CAUSE OF ACTION AGAINST LUIS FURNITURE STYLE CORP., LUIS FURNITURE #1 INC., AND LUIS FURNITURE #2 INC.**
(Corporate Combine)

105. Plaintiffs repeat and reallege all prior allegations as set forth above.

106. Upon information and belief, Luis Furniture Style Corp., Luis Furniture #1 Inc., and Luis Furniture #2 Inc. operated as a single business operation.

107. Upon information and belief, Luis Furniture Style Corp.'s, Luis Furniture #1 Inc.'s, and Luis Furniture #2 Inc's. records were maintained by the same persons and entities.

14

108. Upon information and belief, Luis Furniture Style Corp., Luis Furniture #1 Inc., and Luis Furniture #2 Inc. employed many of the same employees.

109. Upon information and belief, Luis Furniture Style Corp., Luis Furniture #1 Inc., and Luis Furniture #2 Inc. were each merely fragments of a larger business.

110. Upon information and belief, Luis Furniture Style Corp., Luis Furniture #1 Inc., and Luis Furniture #2 Inc. were not maintained as separate corporate entities.

111. Judgment should be entered on the Eighth Cause of Action in favor of Plaintiffs and against Luis Furniture Style Corp., Luis Furniture #1 Inc., and Luis Furniture #2 Inc. determining they were merely part of a corporate combine and declaring Luis Furniture Style Corp., Luis Furniture #1 Inc., and Luis Furniture #2 Inc. liable for each other's debts and for all amounts due in the First through Seventh Causes of Action herein, and such other legal and equitable relief as this Court deems just and proper.

**WHEREFORE** Plaintiffs pray for relief as follows:

a) on the First Cause of Action for all overtime wages due to Plaintiffs and the FLSA Collective Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

b) on the Second Cause of Action for all minimum wages due to Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

c) on the Third Cause of Action for all overtime wages due to Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

d) on the Fourth Cause of Action for all wages due to Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

e) on the Fifth Cause of Action for liquidated damages in the amount of $50.00 per day in which the violation occurred, up to a maximum of $5,000.00 each, along with reasonable attorneys' fees in an amount to be determined by this Court;

f) on the Sixth Cause of Action for liquidated damages in the amount of $250.00 per day for every day in which the violation occurred, up to a maximum of $5,000.00 each, along with reasonable attorney's fees in an amount to be determined by this Court;

g) on the Seventh Cause of Action for damages equal to the greater of $5,000.00 each, or the sum of any actual damages sustained by Plaintiffs, costs of the action, and reasonable attorneys' fees;

h) on the Eighth Cause of Action for an order and judgment determining that Luis Furniture Style Corp., Luis Furniture #1 Inc., and Luis Furniture #2 Inc. were merely part of a corporate combine and declaring Luis Furniture Style Corp., Luis Furniture #1 Inc., and Luis Furniture #2 Inc. liable for each other's debts and for all amounts due in the First through Seventh Causes of Action herein;

i) Interest;

j) Costs and disbursements; and

k) Such other and further relief as the Court deems just and proper.

Dated: New York, New York
August 27, 2020

> */s/ Nicola Ciliotta*
> Nicola Ciliotta
> Katz Melinger PLLC
> 280 Madison Avenue, Suite 600
> New York, New York 10016
> Telephone: (212) 460-0047
> Facsimile: (212) 428-6811
> nciliotta@katzmelinger.com
> *Attorneys for Plaintiffs*