# K<small>ATZ</small>M<small>ELINGER</small>

280 M<small>ADISON</small> A<small>VENUE</small>, S<small>UITE</small> 600
N<small>EW</small> Y<small>ORK</small>, N<small>EW</small> Y<small>ORK</small> 10016
www.katzmelinger.com

Nicola Ciliotta                                                                                           t: 212.460.0047
Katz Melinger PLLC                                                                                  f: 212.428.6811
                                                                                   nciliotta@katzmelinger.com

July 7, 2021

**Via ECF**
Honorable Ronnie Abrams
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:   *Duncan Robles et al. v. Luis Furniture #1 Inc. et al.*
             **Civil Action No. 1:20-cv-06951**

Your Honor:

      We are attorneys for the parties in this matter and write jointly to seek approval of the parties' agreement to settle plaintiffs' claims, which include claims for unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and New York Labor Law ("NYLL"); unpaid minimum wages, failure to timely pay wages, and failure to provide payroll notices and wage statements under the NYLL; and fraudulent filing of information returns in violation of 26 U.S.C. § 7434. Plaintiffs also allege corporate combine against the corporate defendants. The parties write to respectfully request that the Court approve the parties' settlement agreement, a copy of which is attached hereto as **Exhibit 1**, and allow the parties to discontinue the matter with prejudice pursuant to Fed. R. Civ. P. 41.

      As explained in further detail below, the parties respectfully aver that the proposed settlement agreement is fair, reasonable, and equitable.

**Background**

      This action was brought by plaintiffs Oscar Duncan Robles and Jaime Genao (collectively, "Plaintiffs") against defendants Luis Furniture Style Corporation ("Luis Furniture Style"), Luis Furniture #1 Inc. ("Luis Furniture #1"), Luis Furniture #2 Inc. d/b/a Amsterdam Furniture ("Amsterdam Furniture"), Luis Torres, and Nelly Lantigua (collectively, "Defendants") for the claims described above.

Robles alleges that he worked for Defendants as a driver's assistant from in or around December 2014 until on or around November 2, 2019. Throughout his employment, Robles alleges that he regularly worked between approximately fifty-seven (57) and sixty-one (61) hours per week in exchange for a fixed weekly salary of between $400.00 and $600.00 for his regularly scheduled hours, and an additional payment of $10.00 per hour for every hour that he worked past 8:00 p.m. Robles further alleges that he did not receive a wage notice at the start of his employment or at any time thereafter and that he did not receive paystubs with each wage payment, as required under the NYLL. Robles also alleges that he was paid a portion of his compensation by check, with withholdings for federal, state and local taxes, and the remaining portion of his compensation in cash, without any withholdings for federal, state and local taxes, and that the IRS Form W-2 that Defendants filed for Robles only reported the portion of Robles' compensation that was paid by check.

Genao alleges that he worked for Defendants as a driver's assistant from in or around January 2014 until on or around October 21, 2019. Genao alleges that from in or around January 2014 until in or around January 2017, he worked approximately sixty-three (63) hours per week during the summer months but otherwise worked part-time for approximately nineteen (19) hours per week. However, from in or around February 2017 until the end of his employment, Genao alleges that he worked approximately sixty-three (63) hours per week year-round. Genao further alleges that, throughout his employment, Defendants compensated him at a fixed hourly rate of between $7.50 and $10.00 per hour for all regularly scheduled hours worked, and at a rate of $10.00 per hour for every hour that he worked past 8:00 p.m. Genao also alleges that Defendants paid him a portion of his compensation by check, with withholdings for federal, state and local taxes, and the remaining portion of his compensation in cash, without any withholdings for federal, state and local taxes, and that the IRS Form W-2 that Defendants filed for Genao only reported the portion of Genao's compensation that was paid by check.

Defendants adamantly deny any and all wrongdoing and allege that Plaintiffs were properly compensated for all hours worked.

**Damages**

Robles alleges that he is owed approximately $89,615.00 in unpaid overtime wages [1], liquidated damages in an amount equal to his unpaid wages, damages of $5,000.00 for each year in which Defendants filed fraudulent information to the IRS, wage and payroll notice penalties, interest, costs, and attorneys' fees.

Genao alleges that he is owed approximately $14,080.63 in unpaid overtime wages and $39,885.75 in unpaid minimum wages, for a total of approximately $53,966.38, liquidated damages in an amount equal to his unpaid wages, damages of $5,000.00 for each year in which Defendants filed fraudulent information to the IRS, wage and payroll notice penalties, interest, costs, and attorneys' fees.

The attached settlement agreement contains a full settlement of all claims, inclusive of attorneys' fees and costs. The amount agreed upon reflects a mutual desire to reach an amenable

---

[1] Robles' damages for unpaid minimum wages are subsumed within his damages for unpaid overtime wages.

resolution in this matter without additional litigation and represents a significant portion of Plaintiffs' alleged damages. The settlement amount also reflects a significant discount to Defendants in the event that Plaintiffs prevailed in their claims, to which Plaintiffs agreed in order to resolve this action without the need for further litigation, particularly as Defendants have repeatedly represented that they have limited finances and would be unable to pay a large settlement or satisfy a substantial judgment in the event that Plaintiffs ultimately prevailed.

### The Proposed Settlement Should Be Approved

1. <u>The settlement amount is fair and reasonable</u>

The parties' proposed settlement agreement warrants approval as it is fair, reasonable, and equitable. Indeed, the agreement reflects a reasonable compromise of Plaintiffs' FLSA and NYLL claims rather than a mere waiver of statutory rights brought about by Defendants' overreaching. Here, there is no doubt that the settlement did not come about because of "overreaching" by Defendants. To the contrary, Plaintiffs are represented by competent counsel and the settlement was reached after extensive negotiations between the parties, including two (2) Court-annexed mediation sessions. Moreover, Defendants have agreed to pay the entire settlement amount, $65,000.00, to Plaintiffs in a single, lump sum payment, rather than over an extended period of time, which is of vital importance to Plaintiffs given Defendants' representations as to their financial status.

As a result, the settlement sum is fair and reasonable given the amount of compensatory damages Plaintiffs were seeking in this matter compared with the significant risk that Plaintiffs would not be able to recover their damages were they to prevail on their claims after a trial.

2. <u>The settlement agreement was the result of arm's length negotiations by the parties</u>

The proposed settlement is also the product of negotiations between represented parties following extensive settlement discussions, including multiple Court-annexed mediation sessions. Plaintiffs and Defendants hold opposing views on the merit and value of Plaintiffs' claims; however, the arm's length bargaining between the represented parties, along with the information exchanged during settlement negotiations and during the mediation sessions, weighs in favor of finding the settlement reasonable. Moreover, nothing in the record before the Court indicates that the proposed settlement has been achieved through fraudulent or collusive conduct. Through limited discovery and candid discussions between counsel, including two (2) mediations, the parties can assess the strengths and weaknesses of the asserted claims and their respective positions. *See, e.g.*, *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) ("In considering whether a settlement is fair and reasonable, the principal question is whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching'") (citation and internal quotation marks omitted); *Aponte v. Comprehensive Health Mgmt., Inc.,* 2013 WL 1364147, at *4 (S.D.N.Y. Apr. 2, 2013) (courts typically "regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement") (citation and internal quotation marks omitted). Furthermore, as Plaintiffs are no longer employed by Defendants, coercion is unlikely. *See, e.g.*, *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *Cisneros v. Schnipper Rest. LLC,* 2014 WL 67235, at *1 (S.D.N.Y. Jan. 8, 2014) ("Although the FLSA places

strict limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver, these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here") (citation and internal quotation marks omitted).

Additionally, after weighing the factors, the settlement should be allowed to proceed, as: (i) Plaintiffs' alleged injuries will not recur as none of the Plaintiffs remain employed by Defendants; (ii) Defendants explicitly deny any wrongdoing; and (iii) continuing to develop the record will only serve to enlarge costs on both sides and will not serve any useful purpose. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d at 335-36.

### 3. Plaintiffs' counsels' fees are reasonable

Lastly, the parties agree that the settlement amount is a reasonable compromise of all parties' positions, and the proposed amount of attorneys' fees is also fair and reasonable as Plaintiffs' counsel's own compensation does not adversely affect the extent of the relief obtained by counsel on behalf of Plaintiffs. *See Wolinsky,* 900 F. Supp. 2d at 336-37; *Cisek v Natl. Surface Cleaning, Inc.*, 954 F. Supp. 110, 111 (S.D.N.Y. 1997) (finding that the sum sought by plaintiffs' counsel was reasonable, the settlement was untainted by conflict of interest and there was "no reason to conclude that plaintiffs' counsel benefited at the expense of their clients"). Thus, the settlement does not favor Plaintiffs' counsel over Plaintiffs.

Under the proposed agreement, Plaintiffs' counsel would recover $895.00 as reimbursement for costs and expenses [2] and $21,368.34 in fees. Under Plaintiffs' contingency fee agreement, Plaintiffs' counsel is entitled to recover, out of Plaintiffs' settlement amount, fees totaling one-third (1/3) of any amounts recovered on behalf of Plaintiffs after reimbursement of costs and expenses. This fee should be approved, as "[a]n award of one third of the fund is consistent with what reasonable, paying clients pay in contingency employment cases." *Flores v. Anjost Corp.*, 2014 WL 321831, at *8 (S.D.N.Y. Jan. 29, 2014); s*ee also Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) ("Pursuant to plaintiff's retainer agreement with counsel, the fee is one-third of the settlement amount, plus costs. This fee arrangement is routinely approved by courts in this Circuit."). The proposed fee award of one-third (1/3) should also be approved because it was consensual and agreed to by Plaintiffs. *See Mireku v. Red Vision Sys., Inc.,* 2013 WL 6335978, at *3 (S.D.N.Y. Dec. 6, 2013) (approving settlement and noting the consensual nature of the fee arrangement).

As indicated by Plaintiffs' counsel's time records, attached hereto as **Exhibit 2**, Plaintiffs' counsel has spent a total of 50.60 hours on this matter as follows: Nicola Ciliotta, 45.40 hours; Adam Sackowitz, 4.40 hours; and Katherine Morales, 0.80 hours. Plaintiffs' counsels' hourly rates - $275.00, $300.00, and $275.00, respectively – are reasonable based on their experience and are in line with the rates charged by attorneys in this district. *See Vega v. K & C Interior Constr. Corp.*, No. 18-CV-00182, 2018 WL 4376486, at *7 (E.D.N.Y. Aug. 28, 2018), *report and recommendation adopted*, No. 18-CV-182 (ARR), 2018 WL 4374911 (E.D.N.Y. Sept. 13, 2018)

---

[2] Plaintiffs' costs and expenses are as follows: $400.00 for the initial filing fee; and $495.00 for process server fees.

4

(noting that courts in the EDNY have awarded hourly rates up to $200 for recent graduates, $300 for associates, and $450 for partners) (citations omitted).

Mr. Ciliotta earned his B.A. from Vanderbilt University in 2015 and his J.D. from Penn State Law School in 2018. Mr. Ciliotta was admitted to practice in New York in 2019 and to New Jersey in 2021. Since joining the firm in 2018, Mr. Ciliotta has focused his practice exclusively on employment law matters.

Mr. Sackowitz was admitted to the Bars of the states of California in 2014, New York in 2015, and New Jersey in 2016, and has focused his practice on employment law for more than six (6) years. Mr. Sackowitz earned his B.S. from Cornell University in 2009 and his J.D. from the University of California at Los Angeles School of Law in 2014.

Ms. Morales earned her B.B.A. from Pace University in 2014 and her J.D. from Georgetown University Law Center in 2017, and was admitted to practice in New York in 2018 and New Jersey in 2020. Prior to joining the firm in 2017, Ms. Morales worked on various employment law matters while maintaining part-time positions with private law firms, universities, and nonprofits. Since joining the firm in 2017, Ms. Morales has focused her practice exclusively on employment law matters.

The $21,368.34 fee sought by Plaintiffs' counsel results in a 1.5 multiplier of Plaintiffs' counsel's "lodestar" amount of $14,025.50, which is reasonable. *See e.g. Hernandez v. Merrill Lynch & Co.,* No. 11 CIV. 8472 KBF DCF, 2013 WL 1209563, at *9 (S.D.N.Y. Mar. 21, 2013) (approving a 3.8 multiplier and collecting cases); *Steinberg v. Nationwide Mut. Ins. Co.*, 612 F.Supp.2d 219, 224 (E.D.N.Y. 2009) (approving a 1.5 multiplier). As set forth herein, Plaintiffs' counsel negotiated a highly favorable settlement for Plaintiffs at an early stage of the lawsuit. Additionally, as part of the settlement agreement reached by the parties, Defendants agreed to deliver the settlement payment to Plaintiffs in one lump sum payment shortly after the Court's approval of this agreement. Moreover, by reaching a settlement with Defendants, Plaintiffs avoids the risk of either receiving an unfavorable outcome in this matter or, if Plaintiffs prevails on their claims, attempting to enforce a judgment against Defendants who have represented that they have limited financial resources.

Accordingly, the parties respectfully request judicial approval of the parties' proposed settlement agreement, and further request permission to submit a stipulation of dismissal with prejudice consistent with the requirements of Fed. R. Civ. P. 41(1)(a)(ii).

Hon. Ronnie Abrams<br>
July 7, 2021<br>
Page 6

Respectfully submitted,

| | |
|---|---|
| */s/ Nicola Ciliotta* | */s/ Cesar A. Fernandez* |
| Nicola Ciliotta | Cesar A. Fernandez |
| Katz Melinger PLLC | Law Office of Cesar A. Fernandez, P.C. |
| 280 Madison Avenue, Suite 600 | 2298 First Avenue, Second Floor |
| New York, New York 10016 | New York, New York 10035 |
| T: (212) 460-0047 | T: (212) 348-3334 |
| nciliotta@katzmelinger.com | Cfernandezlaw@yahoo.com |
| *Attorneys for Plaintiffs* | *Attorneys for Defendants* |